MARGARET H. GILLESPIE, Bar No. 150072
mgillespie@littler.com
CHRISTINA M. CILA, Bar No. 313226
ccila@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
Telephone: 310.553.0308
Facsimile:  310.553.5583

Attorneys for Defendants
GENERAL MILLS, INC., PETE MOBERG AND
GARY INATOMI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN CASAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GENERAL MILLS, INC., a corporation, PETE MOBERG, an individual, GARY INATOMI, an individual, and DOES 1 to 100, inclusive,<br><br>　　　　Defendants. | Case No. 18-5236<br><br>ASSIGNED FPR ALL PURPOSES TO JUDGE<br><br>(Los Angeles Superior Court Case No. BC665976)<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332, 1441, 1446]<br><br>Complaint Filed:  June 22, 2017 |

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 13, 2018, Defendants GENERAL MILLS, INC. ("General Mills"), GARY INATOMI ("Inatomi"), and PETE MOBERG ("Moberg") will and hereby do remove this action to the United States District Court, Central District of California. Removal is based upon the complete diversity of citizenship between Plaintiff RUBEN CASAS ("Plaintiff") and Defendant General Mills, without regard to the citizenship of Defendants Inatomi and Moberg because Plaintiff's deposition testimony establishes that they are sham defendants. Additionally, Plaintiff's deposition testimony further establishes that the amount in controversy exceeds $75,000. This Notice of Removal is being filed within thirty (30) days of Plaintiff's deposition, which is the first date that Defendants had notice that this case is removable to this Court.

More specifically, removal of this action is based on the following:

## JURISDICTION AND VENUE

1.   This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a). It is an action that may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states (Plaintiff and General Mills) without consideration of the fraudulently joined individual defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.   The action was filed in the Superior Court of the State of California, County of Los Angeles. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(2), 1391, 1446.

## PROCESS, PLEADINGS, AND ORDERS

3.   On or about June 22, 2017, a complaint for damages, entitled *RUBEN CASAS v. GENERAL MILLS, INC., a corporation, PETE MOBERG, an individual, GARY INATOMI, an individual, and DOES 1 to 100, inclusive,* Case No. BC665976 (the "Complaint") was filed in the Superior Court of the State of California, County of

Los Angeles (the "Los Angeles Superior Court"). A true and correct copy of the Complaint is attached as Exhibit "A" to the accompanying Declaration of Christina M. Cila ("Cila Declaration"). The Complaint is incorporated by reference in this Notice without admitting the allegations contained therein.

4. On or about June 30, 2017, the Hon. Stephanie M. Bowick issued a Notice of Case Management Conference. A true and correct copy of the Notice is attached as Exhibit "B" to the Cila Declaration.

5. On or about July 11, 2017, Plaintiff filed a proof of service of the Summons, Complaint and accompanying case initiating documents served upon Defendant General Mills, Inc. A true and correct copy of the proof of service is attached as Exhibit "C" to the Cila Declaration.

6. On or about July 13, 2017, General Mills' agent for service of process was served with the following documents: Plaintiff's Complaint, Notice of Case Assignment, Civil Case Cover Sheet and Cover Sheet Addendum, and Voluntary Efficient Litigation Stipulations Materials. True and correct copies of the accompanying case initiating documents and Service of Process Summary Transmittal Form are attached as Exhibit "D" to the Cila Declaration.

7. On or about August 7, 2017, Defendant General Mills, Inc. filed its Answer to Plaintiff's Unverified Complaint for Damages in the Superior Court of the State of California, County of Los Angeles. A true and correct copy of the Answer is attached as Exhibit "E" to the Cila Declaration.

8. On or about August 7, 2017, Defendant Gary Inatomi filed his Answer to Plaintiff's Unverified Complaint for Damages. A true and correct copy of the Answer is attached as Exhibit "F" to the Cila Declaration.

9. On or about August 7, 2017, Plaintiff filed a proof of service of the Summons, Complaint and accompanying case initiating documents served upon Defendant Gary Inatomi. A true and correct copy of the proof of service is attached as Exhibit "G" to the Cila Declaration.

10. On or about September 21, 2017, Plaintiff filed a Notice of Change of Address or Other Contact Information. A true and correct copy of the Notice is attached as Exhibit "H" to the Cila Declaration.

11. On or about October 31, 2017, Defendant filed a Case Management Statement. A true and correct copy of the Case Management is attached as Exhibit "I" to the Cila Declaration.

12. On or about October 31, 2017, the Court called for hearing the Case Management Conference. A true and correct copy of the minute order is attached as Exhibit "J" to the Cila Declaration.

13. On or about November 1, 2017, Defendant filed a Notice of Ruling at Case Management Conference. A true and correct copy of the Notice is attached as Exhibit "K" to the Cila Declaration.

14. On or about November 14, 2017, Plaintiff filed a Notice of Change of Address or Other Contact Information. A true and correct copy of the Notice is attached as Exhibit "L" to the Cila Declaration.

15. On or about December 7, 2017, Plaintiff filed a Declaration of Sergio Julian Puche Re Failure to Appear. A true and correct copy of the Declaration is attached as Exhibit "M" to the Cila Declaration.

16. On or about December 7, 2017, Plaintiff filed a Notice of Posting Jury Fees. A true and correct copy of the Notice is attached as Exhibit "N" to the Cila Declaration.

17. On or about December 7, 2017, Plaintiff filed a Case Management Statement. A true and correct copy of the Case Management Statement is attached as Exhibit "O" to the Cila Declaration.

18. On or about December 21, 2017, the Court called for hearing the Case Management Conference. A true and correct copy of the minute order is attached as Exhibit "P" to the Cila Declaration.

19. On or about April 4, 2018, the Court called for hearing the Case Management Conference. A true and correct copy of the minute order is attached as Exhibit "Q" to the Cila Declaration.

20. On or about April 6, 2018, Defendant filed a Notice of Trial Setting Conference and Order to Show Cause for Failure to Appear at the Case Management Conference. A true and correct copy of the Notice is attached as Exhibit "R" to the Cila Declaration.

21. On or about April 12, 2018, Plaintiff filed a Notice of Acknowledgment of Receipt. A true and correct copy of the Notice is attached as Exhibit "S" to the Cila Declaration.

22. On or about April 13, 2018, Defendant Pete Moberg filed his Answer to Plaintiff's Unverified Complaint for Damages. A true and correct copy of the Answer is attached as Exhibit "T" to the Cila Declaration.

23. On or about April 23, 2018, Defendant filed an Ex Parte Application for an Order Compelling Plaintiff to Appear For Deposition, together with the Declaration of Margaret H. Gillespie and Declaration of Christina M. Cila. True and correct copies of these documents are collectively attached as Exhibit "U" to the Cila Declaration.

24. On or about April 23, 2018, the Court called for hearing the Ex Parte Application by Defendant for an Order Compelling Plaintiff to Appear For Deposition. A true and correct copy of the minute order is attached as Exhibit "V" to the Cila Declaration.

25. On or about April 23, 2018, Plaintiff served a Notice of Order Denying Defendants Ex Parte Motion to Compel Deposition of Plaintiff Ruben Casas. A true and correct copy of the Notice is attached as Exhibit "W" to the Cila Declaration.

26. On or about April 24, 2018, Defendant filed a Notice of Ruling Regarding Ex Parte Application by Defendant for Order Compelling Plaintiff to

1  Appear for Deposition.  A true and correct copy of the Notice is attached as Exhibit
2  "X" to the Cila Declaration.
3      27.   On or about May 1, 2018, Plaintiff filed an Ex Parte Application for
4  Protective Order, or in the Alternative, Motion to Shorten Time and Briefing Schedule
5  for Motion for Protective Order, together with the Declaration of Sergio J. Puche.
6  True and correct copies of these documents are collectively attached as Exhibit "Y" to
7  the Cila Declaration.
8      28.   On or about May 1, 2018, the Court called for hearing Plaintiff's Ex
9  Parte Motion for Protective Order, or in the Alternative, Motion to Shorten Time and
10 Briefing Schedule for Motion for Protective Order.  A true and correct copy of the
11 minute order is attached as Exhibit "Z" to the Cila Declaration.
12     29.   Or about May 1, 2018, the Court filed an Order Re Plaintiff Ruben
13 Casas' Ex Parte Motion for Protective Order, or in the Alternative, Motion to Shorten
14 Time and Briefing Schedule for Motion for Protective Order, and Plaintiff served a
15 Notice of the Order.  True and correct copies of the Order and Plaintiff's Notice of
16 Order are attached Exhibit "AA" to the Cila Declaration.
17     30.   On or about May 11, 2018, Plaintiff filed an Objection and Motion to
18 Quash Defendant's Subpoena for Production of Business Records Issued to Peter Ho
19 Win, M.D. and Separate Statement in support thereof; Objection and Motion to Quash
20 to Defendant's Subpoena for Production of Business Records Issued to City of Hope
21 National Medical Center and Separate Statement in support thereof; Objection and
22 Motion to Quash Defendant's Subpoena for Production of Business Records Issued to
23 Castellanos Family Practice and Separate Statement in support thereof; Objection and
24 Motion to Quash Defendant's Subpoena for Production of Business Records Issued to
25 Magan Medical Clinic; Objection and Motion to Quash Defendant's Subpoena for
26 Production of Business Records Issued to Citrus Valley Medical Center, Inc. and
27 Separate Statement in support thereof; Objection and Motion to Quash Defendant's
28 Subpoena for Production of Business Records Issued to Foothill Cardiology Medical

Group, Inc. and Separate Statement in support thereof; and Objection and Motion to Quash Defendant's Subpoena for Production of Business Records Issued to Covina Urgent Care. True and correct copies of these documents are collectively attached as Exhibit "BB" to the Cila Declaration.

31. On or about May 14, 2018, Plaintiff filed seven proofs of service of Plaintiff's Notice of Motions and Motions for an Order Quashing or Limiting Deposition Subpoena for Production of Business Records and supporting documents. True and correct copies of the proofs of service are attached as Exhibit "CC" to the Cila Declaration.

32. On or about May 30, 2018, Defendant filed the Declaration of Christina M. Cila Re Plaintiff's Motions For An Order Quashing or Limiting Deposition Subpoenas for Production of Business Records. A true and correct copy of the Declaration is attached as Exhibit "DD" to the Cila Declaration.

33. On or about June 5, 2018, Plaintiff served a Notice of Ruling re the June 5, 2018 Case Management Conference. A true and correct copy of the Notice is attached as Exhibit "EE" to the Cila Declaration.

34. On or about June 5, 2018, Plaintiff served a Notice of Ruling re the June 5, 2018 Case Management Conference. A true and correct copy of the Notice is attached as Exhibit "FF" to the Cila Declaration.

35. Defendants are informed and believe that no other process, pleadings or orders have been filed or served in this case.

**CONSENT OF ALL DEFENDANTS SERVED IN THE ACTION**

36. Defendants General Mills, Inc., Gary Inatomi, and Pete Moberg all consent to the removal of this action to this Court, without waiving their rights to seek dismissal of Plaintiff's claims against each and/or all of them.

**TIMELINESS OF REMOVAL**

37. This Notice of Removal is timely filed in that it is being filed within thirty (30) days after receipt by Defendants of an "amended pleading, motion, order or

other paper from which it may first be ascertained that the case is … removable," and within one year of the date when the state court action was filed. 28 USC §§ 1446(b)(3) and 1446(c)(1).

38. Here, removability was not ascertainable from the face of the Complaint because complete diversity did not exist between Plaintiff and the two individual defendants, Inatomi and Moberg. As a result, the initial complaint did not "affirmatively reveal[ ] on its face the facts necessary for federal court jurisdiction." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 425 F.3d 689, 690–91 (9th Cir. 2005); *Rider v. Sears Roebuck & Co.*, No. CV 11-2700 GAF FMOX, 2011 WL 2222171, at *3 (C.D. Cal. June 7, 2011) ("To the contrary, the initial complaint revealed on its face that federal court jurisdiction did not exist because the plaintiff and a defendant were both citizens of the same state").

39. On May 14 and 15, 2018, Defendants took Plaintiff's deposition. [Cila Declaration, ¶ 35.] As set forth in detail below, Plaintiff's deposition testimony established that Defendants Inatomi and Moberg (the non-diverse defendants) were fraudulently joined in this action. As a result, the first dates upon which it could be ascertained that the case was removable were May 14 and 15, 2018. *Rider, supra*, 2011 WL 2222171, at *4 ("if it could 'first be ascertained' from the testimony 'that the case [was] one which [was] or ha[d] become removable,' that testimony triggered the thirty-day removal period under the statute").

40. Because this Notice is being filed within thirty (30) days of Plaintiff's deposition on May 14 and 15, 2018 (the first dates upon which it could be ascertained that the case was removable), and because it is being filed within one year of the date the action was commenced on June 22, 2017, this Notice is timely filed.

## DIVERSITY OF CITIZENSHIP BETWEEN PLAINTIFF AND THE ONLY PROPERLY JOINED DEFENDANT (GENERAL MILLS)

41. Complete diversity existed at the time that this action was filed and still exists in that Plaintiff and Defendant General Mills are citizens of different states,

while the citizenship of Defendants Inatomi and Moberg must be disregarded because they are not properly joined as defendants in this action. 28 U.S.C. § 1441(a)(2) (diversity based on citizenship of "the parties in interest ***properly joined*** and served as defendants") (emphasis added); *Morris v. Princess Cruises,* 236 F.3d 1061, 1067 (9th Cir. 2001) ("defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant'").

42. Defendants are informed and believe, and on that basis aver, that Plaintiff was at the time of the filing of this action, and still is, a citizen of the State of California. [Complaint, ¶ 1.]

43. Defendant General Mills, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at its headquarters located at Number One General Mills Boulevard, Minneapolis, MN 55426. [*See* accompanying Declaration of Ben Backberg ("Backberg Decl."), ¶ 3.] Its U.S. senior executive team all work out of Defendant's headquarters in Minneapolis, including the Chief Executive Officer; Executive Vice President and Chief Financial Officer; Executive Vice President for Supply Chain; Senior Vice President, General Counsel & Secretary; Senior Vice President and Chief Marketing Officer; and Senior Vice President, Chief Human Resource Officer. All of its U.S. primary executive, administrative, financial, and management functions are in the State of Minnesota, where all of its U.S. activities are directed and coordinated. Its Board of Directors regularly holds meetings in Minneapolis, MN. [*Id*.]

44. Plaintiff's actual employer, General Mills Operations, LLC is also diverse. A limited liability company's citizenship for purposes of diversity jurisdiction is the citizenship of its members. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 195-96, 110 S. Ct. 1015 (1990); *see also Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens"). General Mills Operations, LLC

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

was, at all relevant times, a Delaware limited liability company with its principal place of business at Number One General Mills Boulevard, Minneapolis, MN 55426. General Mills Operations, LLC's sole member is GM Cereals Manager, Inc. GM Cereals Manager, Inc. is a Delaware corporation with a principal place of business at Number One General Mills Boulevard, Minneapolis, MN 55426. GM Cereals Manager, Inc.'s sole stockholder is GM Cereal Holdings, Inc. GM Cereals Holdings, Inc. is a Delaware corporation with a principal place of business at Number One General Mills Boulevard, Minneapolis, MN 55426. GM Cereals Holdings, Inc.'s sole stockholder is General Mills, Inc. As noted above, General Mills, Inc. is a Delaware corporation, with its principal place of business at Number One General Mills Boulevard, Minneapolis, MN 55426. [*See* Backberg Decl., ¶ 4.]

## **DEFENDANTS INATOMI AND MOBERG WERE AND ARE FRAUDULENTLY JOINED**

45. The Court may properly disregard the citizenship of a non-diverse defendant where the plaintiff is unable "to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 549 (9th Cir. 2018), citing *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (fraudulent joinder established where plaintiff "fails to state a cause of action against a resident defendant") and *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998), *cert. denied*, 525 U.S. 963 (1998) (party seeking removal may present additional facts beyond complaint to show fraudulent joinder).

46. At all times relevant to the Complaint, Defendant Inatomi was Plaintiff's direct supervisor, and Defendant Moberg was the Plant Manager. [Complaint, ¶ 2, 13(m).] The only causes of action asserted against Moberg and Inatomi are two claims for harassment in violation of California's Fair Employment and Housing Act ("FEHA"), and a claim for intentional infliction of emotional distress. [Complaint, ¶¶ 27-32, 46-51,105-110.]

47. Based on Plaintiff's admissions, Defendants Inatomi and Moberg may not be held individually liable in this action.

### A. Plaintiff's Admissions Regarding Defendant Moberg

48. The only averments in the Complaint regarding Moberg are that (1) he instituted new policies for rotating schedules and attempted to put Plaintiff on the same rotating schedule as the other employees in his position [Complaint, ¶¶ 11(b) and 13(c)]; (2) he accused Plaintiff of falsifying a quality control report [Complaint, ¶ 13(a)]; and (3) he did not respond to issues Plaintiff raised regarding sanitation, customer complaints, and compliance with company standards [Complaint, ¶ 13(f)].

49. In his deposition, Plaintiff testified that the only one-on-one interactions he had with Defendant Moberg were regarding sanitation issues and safety. [Deposition of Ruben Casas ("Casas Depo."), at 68:20-23; 69:22-71:5, 75:11-76:8; 79:21-80:18; 80:19-81:23; 102:23-104:11.][1] Plaintiff testified that he suspected Moberg told Plaintiff's supervisors to write him up for an admitted lunch period violation. [*Id*. at 108:16-109:12.] Plaintiff testified that Moberg told all employees in Plaintiff's position that they would be rotating and, when Plaintiff said he did not want to rotate, Moberg offered him a non-rotating job at a lower hourly rate. [*Id*. at 110:2-25; 114:9-115:13.] Plaintiff testified that Moberg glanced at him when Plaintiff commented to Moberg about product contamination. [*Id*. at 121:18-122:25.] Plaintiff admitted that Moberg did nothing else that was harassing to him. [*Id*. at 124:22-125:2.]

### B. Plaintiff's Admissions Regarding Defendant Inatomi

50. The averments in Plaintiff's Complaint regarding alleged misconduct by Defendant Inatomi are that (1) he said "'[y]ou have to work faster,' and '[w]e need to load the trucks faster'" [Complaint, ¶ 12(a)]; (2) he made a bet about whether Plaintiff would bid for another position [Complaint, ¶ 12(b)]; (3) he asked "'When are you

---

[1] Excerpts of Plaintiff's deposition transcript are attached as Exhibit "GG" to the Cila Declaration.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

10.

1 going to retire, you're too old for this?'" [Complaint, ¶ 12(d)]; (4) he denied Plaintiff's requests for time off to care for a sick relative [Complaint, ¶ 13(b)]; and (5) he "spread word around the Facility of Mrs. Casas' heart-attack." [Complaint, ¶ 13(w)].

51. In his deposition, Plaintiff testified that Inatomi gave Plaintiff a verbal warning for a lunch violation [Casas Depo., 169:4-170:14] and suspended Plaintiff due to a job-related error [*Id.* at 177:2-179:1]; that Inatomi made a bet about whether Plaintiff would bid for a different position [*Id.* at 170:15-171:9]; that he said to Plaintiff that "you're getting old for that position" after which Plaintiff said he could do the job and Inatomi said "okay" [*Id.* at 171:21-172:7; 176:20-177:1]. Plaintiff testified that, after he took time off from work, other employees asked Plaintiff how his wife was doing [*Id.* at 222:16-224:23]; and, when Plaintiff's granddaughter was hospitalized, Inatomi granted some but not all of Plaintiff's requests for time off [*Id.* at 227:11-228:10]. Plaintiff testified that Inatomi asked him when he was going to retire and, after Plaintiff said not to ask him that, Inatomi promised not to bring it up again [*Id.* at 183:5-11; 233:15-24; 234:15-235:6]. Plaintiff testified that, on one occasion, Inatomi asked him to load the trucks faster because he received customer complaints and many trucks were waiting [*Id.* at 228:14-229:21]. Plaintiff admitted that Inatomi did nothing else to harass him. [*Id.* at 235:19-22].

### C. Plaintiff's Averments Against Defendants Inatomi and Moberg Do Not Give Rise To Individual Liability For Harassment Under FEHA

52. Personnel management actions do not constitute harassment for which a supervisor may be held individually liable. *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998) ("Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance. No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management"), citing *Janken v. GM Hughes Electronics,* 46 Cal. App. 4th

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

11.

55, 63-65 (1996) ("We conclude, therefore, that the Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management").

53. Here, Plaintiff's **_only_** averments against Defendant Moberg consist of personnel actions in the form of instituting a rotating schedule, being involved in a write-up, and not responding to Plaintiff's concerns regarding sanitation and safety. Because Plaintiff cannot hold Moberg individually liable for such personnel management actions, Defendant Moberg is a fraudulently joined defendant whose citizenship must be disregarded. *Cofer v. Parker-Hannifin Corporation*, 194 F. Supp. 3d 1014, 1021 (C.D. Cal. July 8, 2016) (where plaintiff "argues that his work environment became intolerable when he was left out of meetings, his discrimination claims were not investigated, he was refused interviews for promotions, younger white employees were promoted ahead of him, and he was in one instance called on the phone while on vacation and told that he did not get a promotion," court held removal proper because "the straightforward adverse employment actions Mr. Cofer alleges state a claim for discrimination but that absent something more, they do not also state a claim for harassment").

54. With regard to Defendant Inatomi, Plaintiff similarly claims that Inatomi "harassed" him by disciplining him, not granting him time off, and telling him to work

1  faster after receiving customer complaints when there was a backlog of trucks. As set
2  forth above, this conduct constitutes personnel management for which Defendant
3  Inatomi may not be held individually liable. *Reno, supra; Cofer, supra*.

4  55.  Plaintiff adds to these personnel management averments that Defendant
5  Inatomi made a bet about him bidding for another position, told others that Plaintiff's
6  wife had suffered a heart attack, said "you're getting old for that position," and asked
7  him when he was thinking of retiring. These isolated and mundane interactions do not
8  give rise to a claim for harassment under FEHA, which requires the conduct to be
9  "sufficiently severe or pervasive to 'alter the conditions of [the victim's] employment
10 and create an abusive work environment, and excludes conduct that is "occasional,
11 isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d
12 590, 609 (1989). In *Wexler v. Jensen Pharm., Inc.*, No. CV1503518ABAJWX, 2015
13 WL 6159101 (C.D. Cal. Oct. 20, 2015), the court evaluated similar averments against
14 a non-diverse supervisor defendant (claiming the supervisor wrongly disciplined him,
15 made a comment that "older workers are hardest to change," and forced him to drive
16 him to a store to buy hair dye), finding both that they were not sufficiently severe or
17 pervasive tobe actionable and that the supervisor therefore was fraudulently joined.
18 *See also Breyman v. Canon Sols. Am.*, No. CV 15-9975 MRW, 2016 WL 715723, at
19 *2 (C.D. Cal. Feb. 18, 2016) (removal proper where plaintiff's averments did not
20 support claim for harassment against supervisor).

21 56.  Because Plaintiff's averments do not give rise to individual liability
22 against Defendants Moberg and Inatomi, these individual defendants were and are
23 fraudulently joined in Plaintiff's two claims for harassment under FEHA.

**D. Plaintiff's Averments Against Defendants Moberg And Inatomi Do Not Give Rise To Individual Liability For Intentional Infliction Of Emotional Distress**

26 57.  The only other claim asserted individually against Defendants Moberg
27 and Inatomi is Plaintiff's Fourteenth Claim for Intentional Infliction of Emotional
28 Distress ("IIED"). This claim fails for two independent reasons: (1) the claim is

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

13.

barred by *Janken v. GM Hughes Electronics, supra,* 46 Cal. App. 4th 55 (1996), because it is based on personnel management actions; and (2) the claim is preempted by California's Worker's Compensation Act. *Miklosy v. Regents of University of California*, 44 Cal. 4th 876, 902 (2008) (California Workers' Compensation Act displaces common law tort of IIED for extreme and outrageous conduct occurring "at the worksite, in the normal course of the employer-employee relationship").

58. As stated by the court in *Wexler, supra,* in finding the individual supervisor was fraudulently joined and that removal was proper,

> To establish a claim for intentional infliction of emotional distress, a plaintiff must show "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id*. at 1050-51 (citations omitted). Just as management conduct does not constitute harassment, "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id*.

59. Here, as in *Wexler,* Plaintiff's claim is premised mostly on personnel management actions that do not support a claim for IIED. Also as in *Wexler,* the isolated non-management conduct attributed to Inatomi is neither outrageous nor so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1  at * 6-7; *see also Ayala v. Cox Auto., Inc.*, No. CV1606341GHKASX, 2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) (supervisor fraudulently joined on IIED claim where alleged conduct was within management role).

60. Plaintiff's IIED claim also fails because it is barred by the Worker's Compensation Act, which further confirms that Defendants Inatomi and Moberg are not properly joined defendants. *See Wexler, supra* ("[w]here [the] alleged misconduct by an employer is a normal part of the employment relationship, such as demotions, criticism, and negotiations of grievances, an employee who suffers emotional distress cannot avoid the exclusivity rule by simply characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability"); *Ayala, supra,* ("Since Plaintiff's IIED claim is based solely on workplace conduct, it is preempted by the WCA"); *Kaldis v. Wells Fargo Bank, N.A.,* No. 216CV06407ODWGJS, 2016 WL 6407377 (C.D. Cal. Oct. 28, 2016) (because "[a]ll of the IIED that Kaldis allegedly suffered at the hands of El Hage occurred during the normal course of their employer-employee relationship," IIED claim barred and individual supervisor found to be fraudulently joined).

61. Because Plaintiff's averments do not give rise to individual liability against Defendants Moberg and Inatomi, these individual defendants were and are fraudulently joined in Plaintiff's claim for intentional infliction of emotional distress.

## AMOUNT IN CONTROVERSY

62. Plaintiff seeks to recover economic damages, non-economic damages, and punitive damages on each of his causes of action. [Complaint, ¶¶ 16, 17, 24, 26, 30, 32, 36, 38, 43, 45, 49, 51, 56, 58, 64, 66, 72, 74, 78, 80, 84, 86, 90, 92, 96, 98, 101, 103, 109, 110.] He also seeks to recover attorney's fees, which are recoverable on all but two of his claims. [Complaint, Prayer for Relief.] The jurisdictional minimum may be satisfied by Plaintiff's claims for economic damages, non-economic damages, attorneys' fees, and punitive damages. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

15.

63. **Economic Damages.** At the end of Plaintiff's employment with General Mills, he was paid at the rate of $19.71 per hour plus overtime. [*See* Declaration of Jamiee Licea in Support of Defendant's Notice to Federal Court of Removal ("Licea Decl.") ¶ 3.] Plaintiff also was eligible for employment benefits in the form of medical, dental and life insurance benefits, as well as 401(k) matching. [Licea Decl. ¶ 4.] Plaintiff was terminated on September 26, 2016, or approximately eighty-nine (89) weeks before the date of this Notice. [Complaint, ¶ 14.] Accordingly, Plaintiff's lost earnings would exceed $70,000 to date, exclusive of overtime compensation. [Licea Decl. ¶ 3.] The total value of his employer-provided benefits for that time-period would exceed $27,000. [Cila Declaration, ¶ 36.]

64. **Non-Economic Damages.** In order to establish the amount of emotional distress damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts. *Vasquez v. Arvato Digital Services, LLC*, 2011 WL 2560261 (C.D. Cal. June 27, 2011). In *Silverman v. Stuart F. Cooper, Inc.*, 2013 WL 5820140 (LASC Case No. BC467464), the plaintiff claimed he was discriminated and harassed against on account of his age and wrongfully terminated in violation of public policy. The plaintiff was awarded $116,333 for past emotional distress and $35,000 for future emotional distress. *See also Navarro v. 4 Earth Farms Inc.; etc.,* 2017 WL 3986497 (LASC Case No. BC606666) (jury awarded plaintiff $200,000 in non-economic damages where she asserted various disability-related claims based on being terminated after sustaining a back injury for which she requested and was denied an accommodation).

65. **Punitive Damages.** In order to establish the amount of punitive damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts. In *Navarro v. 4 Earth Farms Inc.; etc.,* 2017 WL 3986497 (LASC Case No. BC606666), the jury awarded plaintiff $100,000 in punitive damages where she asserted various disability-related claims based on being terminated after sustaining a back injury for which she requested and was denied an accommodation.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

16.

*See also, Huerta v. Pacesetter Inc.*, 2015 WL 5830070 (LASC Case No. BC526645) (plaintiff worked as assembler for almost 23 years, claimed she developed carpal tunnel and defendant failed to accommodate her, instead creating job rotation to force her into retirement; jury awarded plaintiff $96,626 in punitive damages).

66. **Attorneys' Fees.**  Where, as here, a prevailing plaintiff is entitled by statute to recover attorneys' fees, such fees are included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998).  In recent years, courts in this district have valued claims for attorney's fees in employment discrimination cases at $30,000 for purposes of determining the amount in controversy at the time of removal.  *Ponce v. Medical Eyeglass Center, Inc.*, 2015 WL4554336, at *4 (C.D. Cal. July 27, 2015).  *See also Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. March 3, 2015).

67. Accordingly, when viewed in combination, the amount in controversy on Plaintiff's claims for economic damages, non-economic damages, attorneys' fees, and punitive damages, exceeds $75,000.  Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a).

## CONCLUSION

For the reasons set forth above, the Complaint is removable to this Court pursuant to 28 U.S.C. § 1441.  Pursuant to 28 U.S.C. § 1446(b), the Notice of Removal was filed within thirty (30) days of service on any defendant of a paper providing notice that a basis for removal of this action exists.

Dated: June 13, 2018                               Respectfully submitted

/s/Margaret H. Gillespie
CHRISTINA M. CILA
MARGARET H. GILLESPIE
LITTLER MENDELSON, P.C.
Attorneys for Defendants
GENERAL MILLS, INC., PETE MOBERG and GARY INATOMI

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

17.